UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| LINDA LATOUCHE,<br>           Plaintiff,<br>v.<br><br>CITY OF EVANSVILLE,<br>RAYMOND HOLDEN, in his individual<br>and official capacities,<br>JOHN PIESZCHALSKI, in his individual<br>and official capacities,<br>PATRICK MCDONALD, in his individual<br>and official capacities,<br>PETER DEYOUNG, in his individual and<br>official capacities,<br>KEVIN DONAHUE, in his individual and<br>official capacities,<br>           Defendants. | Case No.:<br><br>3 18-cv- 0192 RLY -MPB<br><br>JURY TRIAL DEMANDED<br><br>FILED<br>OCT 12 2018<br>U.S. CLERK'S OFFICE<br>INDIANAPOLIS, INDIANA |

**COMPLAINT**

Plaintiff, Linda Latouche (hereinafter "Ms. Latouche" or "Plaintiff"), by and through counsel of record, Scott L. Barnhart and Brooke Smith of Keffer Barnhart LLP for her Complaint for damages against Defendants City of Evansville, Raymond Holden, John Pieszchalski, Patrick McDonald, Peter DeYoung, and Kevin Donahue states as follows:

**INTRODUCTION**

1. The Plaintiff seeks money damages against Defendants for violation of rights as guaranteed under the United States Constitution and/or Indiana common law.

**JURISDICTION AND VENUE**

2. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's causes of action arising under the Constitution of the United States and 42 U.S.C. § 1983.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. The Plaintiff tendered her Notice of Tort Claim on or about July 27, 2017.

## PARTIES

5. Linda Latouche (hereinafter "Ms. Latouche") resided in Evansville County, Indiana at all times relevant to this Complaint.

6. Raymond Holden is, or was at all times relevant to this Complaint, a law enforcement officer with the Evansville Police Department.

7. John Pieszchalski is, or was at all times relevant to this Complaint, a law enforcement officer with the Evansville Police Department.

8. Patrick McDonald is, or was at all times relevant to this Complaint, a law enforcement officer with the Evansville Police Department.

9. Peter DeYoung is, or was at all times relevant to this Complaint, a law enforcement officer with the Evansville Police Department.

10. Kevin Donahue is, or was at all times relevant to this Complaint, a law enforcement officer with the Evansville Police Department.

11. The Evansville Police Department is part of the City of Evansville, which is a political subdivision located in Vanderburgh County, Indiana.

## FACTUAL BACKGROUND

12. On or about February 2, 2017, Linda Latouche was approximately fifty-nine (59) years old and on disability from her employment for the federal government. Prior to that employment, Ms. Latouche had previously been trained, licensed, and employed as a nurse.

13. A dispute occurred between Ms. Latouche's adult daughter and the father of one of Ms. Latouche's grandchildren. During that dispute, Ms. Latouche's daughter was repeatedly struck in the face with a pistol and was bleeding.

14. Three of Ms. Latouche's grandchildren were in the home and witnessed the dispute and abuse. One child was a teenager and the remaining two children were approximately five (5) and two (2) years old.

15. The five-year-old sustained or may have sustained an injury as a result of the dispute.

16. Ms. Latouche lived and was asleep in the house next door. She was not involved in nor a witness to that dispute.

17. Officers with the Evansville Police Department were called to the home as a result of the dispute.

18. Officer William George spoke with Mr. Latouche's daughter and found out Ms. Latouche lived next door.

19. Officer George walked to Ms. Latouche's home, knocked on her door, and let her know what was going on.

20. Officer George indicated to Ms. Latouche that her daughter would need to go to the hospital and that they needed someone to be with the children.

21. When Ms. Latouche arrived, there were several officers surrounding her daughter.

22. Ms. Latouche spoke briefly with her daughter and the officers.

23. Officer George directed Ms. Latouche to the back where the two youngest children were located.

24. Detective Peter DeYoung, Detective John Pieszchalski, and Detective Raymond Holden were all in the back room with the children.

25. Detective Raymond Holden was standing in or near the doorway of the room when Ms. Latouche arrived.

26. Ms. Latouche said "excuse me" or words to that effect to get Detective Holden's attention.

27. Ms. Latouche repeated, "excuse me" or words to that effect and tapped Detective Holden on his shoulder and/or back.

28. In response, Officer Holden grabbed Ms. Latouche, used an arm bar hold against her, and/or placed his arm against Ms. Latouche's neck.

29. Officer Holden then shoved Ms. Latouche into a nearby closet.

30. Officer Holden pulled Ms. Latouche out of the closet by her wrist and told her that she was being arrested for obstruction and/or resisting law enforcement.

31. Detective Holden then forcibly shoved her out of the bedroom, causing Ms. Latouche to stumble and/or trip.

32. Detectives Pieszchalski and/or DeYoung were inside the room where Detective Holden used force against Ms. Latouche. Officer George was located in the dining room just outside the bedroom where Ms. Latouche was pushed.

33. Officer George indicated that Ms. Latouche could see and be with her grandchildren after the officers were through interrogating them.

34. Detective DeYoung asked Officer George a question essentially seeking to know who would be in charge of the children after the officers left.

35. Officer George indicated that Ms. Latouche would be in charge.

36. Ms. Latouche stepped outside the house and later reentered of her own volition.

37. Ms. Latouche sat with her grandchildren inside the home with officers around, but without incident.

38. Sometime later, Sergeant Patrick McDonald arrived on scene to evaluate Detective Holden's uses of force against Ms. Latouche.

39. Sgt. McDonald asked Ms. Latouche what had happened.

40. Ms. Latouche showed Sgt. McDonald the bruises that had already began to form on her body. Sgt. McDonald said, "I don't want to see that" or words to that effect.

41. Ms. Latouche told Sgt. McDonald what happened and demonstrated the hold that Detective Holden used against her on Sgt. McDonald.

42. Sgt. McDonald pushed Ms. Latouche onto the couch.

43. Sgt. McDonald went outside and told Officer Holden and Officer Kevin Donahue to arrest Ms. Latouche.

44. Sgt. McDonald was aware or reasonably should have been aware that Officer George directed Ms. Latouche to go into the room with her grandchildren, that Ms. Latouche did not commit battery against Officer Holden, and that Ms. Latouche did not commit battery against him.

45. Sgt. McDonald was also aware or reasonably should have been aware that there was no probable cause to arrest Ms. Latouche for battery or any other crime.

46. Ms. Latouche was ultimately handcuffed by Officer Holden who was aware or reasonably should have been aware that Ms. Latouche did not commit battery against him nor Sgt. McDonald. Officer Holden was aware or reasonably should have been aware that he had no probable cause to arrest Ms. Latouche for battery or any other crime.

47. Officer Holden failed to double lock the handcuffs he applied to Ms. Latouche.

48. Officer Donahue were present during Ms. Latouche's handcuffing.

49. Officer Donahue was aware or reasonably should have been aware that Ms. Latouche did not commit battery against Officer Holden nor Sgt. McDonald. He was also aware or reasonably should have been aware that there was no probable cause to arrest Ms. Latouche for battery or any other crime.

50. Ms. Latouche was compliant with the officers' orders during her handcuffing.

51. During the handcuffing, Ms. Latouche winced in pain and indicated that the handcuffs were too tight.

52. Officer Donahue said "you're struggling, you're struggling, that's what's going on" or words to that effect.

53. Ms. Latouche was walked out to a police vehicle by Officer Donahue.

54. When asked why she was being arrested, Officer Donahue said for "interfering" or words to that effect.

55. Another officer then indicated that her arrest was for battery on a law enforcement officer.

56. Officer Donahue then said, "battery on law enforcement, there you go, there you have it" or words to that effect.

57. As they were walking, Officer Donahue was tugging at Ms. Latouche's right lower arm, which caused additional pain then numbness to her thumb and fingers.

58. During the walk, Ms. Latouche indicated to Officer Donahue he was hurting her wrist.

59. In response Officer Donahue said, "I'm not hurting you, you're hurting you" or words to that effect.

60. Ms. Latouche lost feeling in her hand as a result of the handcuffs being too tight.

61. When they arrived at the car, Officer Donahue adjusted Ms. Latouche's handcuffs.

62. During her initial handcuffing the handcuffs had not been double locked and had been overtightened.

63. Officer Donahue ordered Ms. Latouche to get into the vehicle.

64. Ms. Latouche indicated that she had an artificial knee and asked for accommodations in getting into the vehicle. Specifically, Ms. Latouche needed to sit facing out of the vehicle and then turn into the car.

65. However, Officer Donahue refused to provide her enough space to do so and denied Ms. Latouche's request for an accommodation.

66. Ms. Latouche's artificial knee was struck during her entrance into the vehicle. Her head was also struck approximately three times entering the vehicle.

67. Upon her arrival at the Vanderburgh County Jail, Officer Donahue noted that Ms. Latouche was cooperative.

68. Ms. Latouche asked Officer Donahue for accommodations in getting out of the vehicle and was again denied.

69. While taking Ms. Latouche out of the vehicle, Officer Donahue stated, "all we wanted you to do was leave our detective alone" or words to that effect.

70. Ms. Latouche was placed on a seventy-two (72) hour hold under a miscellaneous criminal cause number as a result of the officers' allegations.

71. Ms. Latouche was formally charged under a separate criminal cause number with two counts of Battery Against a Public Safety Officer.

72. Those counts related to Ms. Latouche's alleged contact with Detective Holden and Sgt. McDonald and were premised on the officers' allegations about Ms. Latouche's alleged battery against them.

73. The named Defendants each provided depositions and testimony against Ms. Latouche during the course of that criminal matter.

74. As a result of her pre-trial release conditions, Ms. Latouche's freedom to travel was restricted.

75. On at least one occasion, Ms. Latouche requested to travel for a family vacation and was required to waive her rights against extradition during that trip and surrender her lawfully possessed passport.

76. A two-day Jury Trial commenced on July 26, 2018.

77. The Jury found Ms. Latouche not guilty on both charges.

78. At the time of the incident, and throughout the trial, Ms. Latouche was a well-known individual in the community through her work as a Spanish translator for various nursing homes, her active participation in student government and committees at University of Southern Indiana, and her previous Spanish teaching activities.

79. During the pendency of her underlying criminal case, Ms. Latouche did not feel safe going in public and felt humiliated and/or shamed as a result of her arrest and/or her ongoing criminal matter.

80. Ms. Latouche has obtained prescription medication and sought therapy as a result of her anxiety and stress from the officers' actions.

### COUNT I—Excessive Force – Fourth Amendment - Detective Holden

81. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

82. Detective Holden is a "person" within the meaning of 42 U.S.C. § 1983.

83. Detective Holden's actions and/or omissions were taken under color of state law based on his authority and official position as a law enforcement officer with the Evansville Police Department.

84. The Fourth Amendment to the United States Constitution provides that people shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

85. Detective Holden's actions and/or omissions constituted a violation and a deprivation of Plaintiff's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution when he implemented various uses of force against her in the back room.

86. Detective Holden's actions and/or omissions caused Plaintiff to suffer harm.

87. Plaintiff pursues this claim for excessive force pursuant to the Fourth and/or Fourteenth Amendments.

88. Detective Holden's actions and/or omissions were made knowingly, intentionally, or with reckless disregard for Plaintiff's rights.

89. Detective Holden's conduct is actionable under 42 U.S.C. § 1983.

### COUNT II—Failure to Protect – Fourth Amendment
### Detective Pieszchalski and/or DeYoung

90. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

91. Detectives Pieszchalski and/or DeYoung are "persons" within the meaning of 42 U.S.C. § 1983.

92. The actions and/or omissions of Detectives Pieszchalski and/or DeYoung were taken under color of state law based on their authority and official position as law enforcement officers with the Evansville Police Department.

93. The Fourth Amendment to the United States Constitution provides that people shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

94. The Defendants' actions or omissions constituted a violation and a deprivation of Plaintiff's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution.

95. Detectives Pieszchalski and/or DeYoung failed to protect Plaintiff from Detective Holden's unlawful use of force outlined in Count I and the Factual Background included above.

96. Each officer observed Detective Holden physical assault, attack, and/or injure Plaintiff.

97. Each officer was aware that the actions or omissions of Detective Holden constituted a violation of the Fourth and/or Fourteenth Amendments of the United States Constitution.

98. Each officer had a realistic opportunity to do something to prevent harm from occurring to Plaintiff.

99. Each officer failed to take reasonable steps to prevent harm from occurring to Plaintiff.

100. Each officer's actions or omission were made knowingly, intentionally, or with reckless disregard for Plaintiff's constitutional right or rights.

101. Each officer's conduct is actionable under 42 U.S.C. § 1983 and caused Plaintiff harm.

### COUNT III: Fourth and Fourteenth Amendments – Unlawful Arrest
### Detective Holden and/or Sgt. McDonald

102. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

103. Detective Holden and/or Sgt. McDonald are each considered a "person" within the meaning of 42 U.S.C. § 1983 and were acting under color of state law.

104. The Fourth Amendment to the United States Constitution provides that people shall be secure in their persons against unreasonable searches and seizures.

105. The actions or omissions of Detective Holden and/or Sgt. McDonald caused the Plaintiff to be unlawfully arrested, which constitutes a violation and a deprivation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

106. The actions or omissions Detective Holden and/or Sgt. McDonald were made knowingly, intentionally, and/or with reckless disregard for Plaintiff's rights.

107. Defendants' conduct is actionable under 42 U.S.C. § 1983.

108. The Plaintiff suffered compensable harm as a direct and proximate result of the Defendants' actions and/or omissions.

109. Each officer's conduct is actionable under 42 U.S.C. § 1983 and caused Plaintiff harm.

**COUNT IV—Failure to Protect – Fourth Amendment – Officer Donahue**

110. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

111. Officer Donahue is a "person" within the meaning of 42 U.S.C. § 1983.

112. The actions and/or omissions of Officer Donahue were taken under color of state law based on his authority and official position as a law enforcement officer with the Evansville Police Department.

113. The Fourth Amendment to the United States Constitution provides that people shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

114. The Defendant's actions or omissions constituted a violation and a deprivation of Plaintiff's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution.

115. Officer Donahue failed to protect Plaintiff from unlawful arrest outlined in Count III and the Factual Background included above.

116. Officer Donahue was aware that the actions or omissions of Detective Holden and/or Sgt. McDonald constituted a violation of the Fourth and/or Fourteenth Amendments of the United States Constitution.

117. Officer Donahue had a realistic opportunity to do something to prevent harm from occurring to Plaintiff.

118. Officer Donahue failed to take reasonable steps to prevent harm from occurring to Plaintiff.

119. Officer Donahue's actions or omission were made knowingly, intentionally, or with reckless disregard for Plaintiff's constitutional right or rights.

120. Officer Donahue's conduct is actionable under 42 U.S.C. § 1983 and caused Plaintiff harm.

### COUNT V—Excessive Force – Fourth Amendment – Detective Holden

121. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

122. Detective Holden is a "person" within the meaning of 42 U.S.C. § 1983.

123. Detective Holden's actions and/or omissions were taken under color of state law based on his authority and official position as a law enforcement officer with the Evansville Police Department.

124. The Fourth Amendment to the United States Constitution provides that people shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

125. Detective Holden's actions and/or omissions constituted a violation and a deprivation of Plaintiff's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution when he failed to double lock the handcuffs he applied to Ms. Latouche and overtightened those cuffs.

126. Detective Holden's actions and/or omissions caused Plaintiff to suffer harm.

127. Plaintiff pursues this claim for excessive force pursuant to the Fourth and/or Fourteenth Amendments.

128. Detective Holden's actions and/or omissions were made knowingly, intentionally, or with reckless disregard for Plaintiff's rights.

129. Detective Holden's conduct is actionable under 42 U.S.C. § 1983.

**COUNT VI—Failure to Protect – Fourth Amendment – Officer Donahue**

130. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

131. Officers Donahue are "persons" within the meaning of 42 U.S.C. § 1983.

132. The actions and/or omissions of Officers Donahue were taken under color of state law based on their authority and official position as law enforcement officers with the Evansville Police Department.

133. The Fourth Amendment to the United States Constitution provides that people shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

134. The Defendants' actions or omissions constituted a violation and a deprivation of Plaintiff's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution.

135. Officer Donahue failed to protect Plaintiff from Detective Holden's unlawful use of force outlined in Count V and the Factual Background included above.

136. Each officer observed and/or were aware of Detective Holden's overtightening and failure to double lock the handcuffs applied to Ms. Latouche.

137. Each officer was aware that the actions or omissions of Detective Holden constituted a violation of the Fourth and/or Fourteenth Amendments of the United States Constitution.

138. Each officer had a realistic opportunity to do something to prevent harm from occurring to Plaintiff.

139. Each officer failed to take reasonable steps to prevent harm from occurring to Plaintiff.

140. Each officer's actions or omission were made knowingly, intentionally, or with reckless disregard for Plaintiff's constitutional right or rights.

141. Each officer's conduct is actionable under 42 U.S.C. § 1983 and caused Plaintiff harm.

### COUNT VII: Malicious Prosecution – All Defendants

142. Plaintiffs incorporate by reference the allegations of the foregoing paragraphs as though set forth at length herein.

143. As a result of Indiana's Tort Claim Act, plaintiff's may bring malicious prosecution claims pursuant to 42 U.S.C. § 1983. *See Katz-Crank v. Haskett*, 843 F.3d 641 (7th Cir. 2016).

144. The Defendants are each considered a "person" within the meaning of 42 U.S.C. § 1983.

145. The Defendants' actions and/or omissions were taken under color of state law based on their authority and official position as officers with Evansville Police Department.

146. The Defendants' actions and/or omissions constituted a violation of the Plaintiff's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution.

147. The Defendants knew that one or more of the officers used excessive force against Ms. Latouche.

148. The Defendants then caused an action to be brought against the Plaintiff under cause number 82D03-1702-F6-000692.

149. The Defendants maliciously caused Plaintiff to be prosecuted in the absence of probable cause.

150. All charges against the Plaintiff were subsequently resolved in a finding of not guilty after a jury trial.

151. The Plaintiff suffered compensable harm as a direct and proximate result of the Defendants' actions and/or omissions.

### COUNT VIII: Battery – Detective Holden

152. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

153. Pursuant to Ind. Code § 35-41-3-3(b), law enforcement officers may only use reasonable force they reasonably believe necessary to effect a lawful arrest.

154. When an officer uses unreasonable force, they are liable for state law tort of battery. *See Kemezy v. Peters*, 622 N.E.2d 1296 (Ind. 1993); *see also Fidler v. City of Indianapolis*, 428 F.Supp.2d 857 (S.D. Ind. April 20, 2006).

155. Further, a person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is a Class A misdemeanor if it results in bodily injury to any other person. Ind. Code § 35-42-2-1.

156. Holden used unreasonable force and committed battery against the Plaintiff when he implemented several uses of force against her in the back room.

157. Holden's actions, omissions, and/or failures were made in violation of the I.C. § 35-41-3-3(b) and 35-42-2-1.

158. Holden's actions, omissions, and/or failures caused Plaintiff to suffer harm.

159. Holden's actions, omissions, and/or failures were made knowingly, intentionally, and/or with reckless disregard for Plaintiff's rights.

160. The Plaintiff suffered compensable injury as a direct and proximate result of Defendant's actions.

### COUNT IX: Battery – Detective Holden

161. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

162. Pursuant to Ind. Code § 35-41-3-3(b), law enforcement officers may only use reasonable force they reasonably believe necessary to effect a lawful arrest.

163. When an officer uses unreasonable force, they are liable for state law tort of battery. *See Kemezy v. Peters*, 622 N.E.2d 1296 (Ind. 1993); *see also Fidler v. City of Indianapolis*, 428 F.Supp.2d 857 (S.D. Ind. April 20, 2006).

164. Further, a person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is a Class A misdemeanor if it results in bodily injury to any other person. Ind. Code § 35-42-2-1.

165. Holden used unreasonable force and committed battery against the Plaintiff during her handcuffing in violation of Indiana law.

166. Holden's actions, omissions, and/or failures caused Plaintiff to suffer harm.

167. Holden's actions, omissions, and/or failures were made knowingly, intentionally, and/or with reckless disregard for Plaintiff's rights.

168. The Plaintiff suffered compensable injury as a direct and proximate result of Defendant's actions.

### COUNT X: Confinement – Detective Holden

169. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

170. In Indiana, false imprisonment is, "an 'unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without counsel.'" *Ali v. Alliance Home Health Care, LLC*, 53 N.E.3d 420 (Ind. Ct. App. 2016).

171. Additionally, "[a] person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement." *See* Indiana Code § 35-42-3-3(a).

172. Holden criminally confined the Plaintiff in the back room of the home in violation of Indiana law.

173. Holden's actions, omissions, and/or failures were made knowingly, intentionally, and/or with reckless disregard for Plaintiff's rights.

174. Holden's actions, omission, or failures caused Plaintiff to suffer harm.

175. The Plaintiff suffered compensable injury as a direct and proximate result of Defendants' actions.

## COUNT XI: Americans with Disabilities Act Violation 42 U.S.C. § 12132
## City of Evansville

176. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

177. No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132.

178. Plaintiff is an individual with a recognized disability. Plaintiff is qualified to participate in or receive the benefit of the services provided by the City of Evansville.

179. The City of Evansville is a public entity within the meaning of 42 U.S.C. § 12131(1)(B).

180. Plaintiff was excluded from or denied the benefits of City of Evansville's services or otherwise discriminated against by the public entity because of her disability.

181. The City of Evansville failed to properly train police regarding successful and lawful interaction with people with disabilities.

182. City of Evansville failed to reasonably accommodate Plaintiff's disability during her arrest, which caused her to suffer greater injury or indignity than other arrestees.

183. The development and application of essential policies and procedures along with training would have informed the officers about how to appropriately interact with people with disabilities.

184. The City of Evansville, by and through its officers, refused to provide a reasonable modification or accommodation of the Plaintiff's disability. One or more officers were deliberately indifferent to her recognized disability.

185. Plaintiff was harmed as a result of the City of Evansville's unlawful actions.

## REQUESTED RELIEF

186. Plaintiff respectfully requests:

   a. Damages including compensatory and punitive damages;

   b. Reasonable attorney's fees pursuant to 42 U.S.C. 1988;

   c. Reasonable attorney's fees pursuant to 42 U.S.C. 12205;

   d. Reasonable attorney's fees and treble damages pursuant to Ind. Code § 34-24-3-1;

   e. All appropriate interest on all amounts that are recovered;

   f. All appropriate injunctive relief;

   g. The costs and expenses incurred in the prosecution of this action; and

   h. All other just and proper relief.

## DEMAND FOR A JURY TRIAL

187. Plaintiff demands a jury trial pursuant to the Seventh Amendment of the United States and Article 1, Section 20 of the Indiana Constitution for all claims.

Respectfully Submitted,

*/s/ Scott L. Barnhart*

Scott L. Barnhart, #25474-82
Brooke Smith, #32427-03
Keffer Barnhart LLP